IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RODOLFO C. ANDERSON,

Plaintiff,

vs.

DR. TALISMAN, *et al*.,

Defendants.

____________________________/

Case No. 1:07-cv-00715 ALA (P)

ORDER

Plaintiff Rodolfo C. Anderson ("Anderson") is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action under 42 U.S.C. § 1983 against Defendant Talisman, M.D. ("Dr. Talisman"). Anderson alleges constitutional violations under the First and Fourteenth Amendments. Pending before this Court are Plaintiff's Complaint ("Compl.") (No. 1), Dr. Talisman's Answer ("Answer") (No. 18), and Anderson's Reply ("Reply") (No. 21). For the reasons discussed herein, Plaintiff has partially failed to state a claim upon which relief may be granted. Accordingly, the court dismisses the complaint, in part, but grants Anderson leave to

amend.[1]

**I**

Count I alleges that "Anti-Psychotic medication was administered upon [Anderson] against his will without due process." Compl. at 6. Anderson alleges that on August 9, 2006, he "was exercising his First Amendment Right to Freedom of Speech by talking loudly in his cell to another inmate about how America wrongfully went to war with Iraq based upon lies." *Id.* While Anderson was talking loudly, a nurse and correctional officer approached his cell door. *Id.* Anderson alleges that the nurse had a plastic cup containing an unknown liquid and told Anderson to "'Drink it!'" *Id.* Anderson claims this conversation followed:

Nurse: Mr. Anderson, drink this.
[Anderson]: What is it?
Nurse: Risperidal.[2] The doctor ordered it for you.
[Anderson]: I already took my morning meds., less than an hour ago and I did not ask for no new medication. Can I speak to the doctor?
Nurse: No you cannot. Are you refusing the medication.
[Anderson]: No. I'm not refusing. I would just like to speak to the doctor. Did you even check to see if I'm allergic to that medication?
Nurse: Okay, you're refusing!

*Id.* Soon after this encounter, "two correctional officers returned to [his] cell door, handcuffed him and took him to [Dr. Talisman's] office." *Id.* at 7. Anderson alleges that Dr. Talisman "began to speak in a belligerent tone" and recounts the following conversation:

Dr. Talisman: I am ordering involuntary medication three times a day for three days!

---

[1] The court notes that Anderson's complaint includes pages 1-3 and 6-9 along with exhibits. If pages 4-5 were inadvertently omitted, Anderson should include these with his first amended complaint, if necessary.

[2] "RISPERDAL® (risperidone) is a psychotropic agent belonging to the chemical class of benzisoxazole derivatives." Physicians' Desk Reference, Thomson PDR, Montvale N.J. (2006).

[Anderson]: For what? I haven't done anything wrong.
Dr. Talisman: You're psychosis. You're hearing voices!
[Anderson]: No I'm not. I never told you that.
Dr. Talisman: Oh well. That's what I've ordered. Get him out of here!
[Anderson]: Can I say something in my behalf, since no one else is here to speak up for me?
Dr. Talisman: No! Get him out of here!

*Id.* Anderson alleges that after these events, he was given "very high dose(s) of Zyprexia"[3] on four occasions. *Id.* Anderson maintains that a nurse "[i]nvoluntarily administered psychotropic medication into his veins, by giving him a shot in his upper left back." *Id.* These events took place on August 9 and 10, 2006. *Id.* at 6-7. Anderson also asserts that on August 30, 2006, Dr. Talisman "once again ordered involuntary medication to be administered upon [him] against his will." *Id.* at 7.

In Count II, Anderson alleges that he "was administered a very high dose of psychotropic medication without first being advised of the possible side-effects of the drug by [his] treating physician" and this resulted in Anderson's "[f]reedom of speech to be chilled." *Id.* at 8. Anderson claims that the medication caused him to feel "nauseous, delusional, over intoxicated with slurred speech. [He] was unable to stand on his own accord. He also suffered from hallucination, seeing things that were not there, or rather would 'appear and disappear.'" *Id.* Anderson maintains that he remained in this state for "32 hours." *Id.* Finally, he asserts that the medication immediately caused muscle spasms which he continues to suffer from. *Id.*

Following Anderson's claim for relief, he concludes that "These blatant acts . . . were undue retaliatory measures exercised under the color of authority, not to advance a legitimate medical or correctional goal (Because [Anderson] was not a harm or threat to himself or anyone

---

[3] "ZYPREXA (olanzapine) is a psychotropic agent that belongs to the thienobenzodiazepine class." Physicians' Desk Reference, Thomson PDR, Montvale N.J. (2006).

else,) but to punish him solely for exercising his First Amendment right to free speech." *Id.* at 9.

**II**

**A**

The Prison Litigation Reform Act provides "[n]otwithstanding any filing fee, or any portion thereof, that may have been paid, the court *shall* dismiss the case at any time if the court determines that the action or appeal fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii) (1996) (emphasis added). "In determining whether a complaint states a claim, all allegations of material fact are taken as true and construed in the light most favorable to the plaintiff. A complaint may not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [the plaintiff's] claims which would entitle [the plaintiff] to relief." *Barnett v. Centoni,* 31 F.3d 813, 816 (9th Cir. 1994) (per curiam) (citations omitted). "[A] complaint should not be dismissed if it states a claim under any legal theory, even if the plaintiff erroneously relies on a different legal theory." *Haddock v. Bd. of Dental Examiners of Cal.*, 777 F.2d 462, 464 (9th Cir. 1985); *see also McCalden v. Cal. Library Ass'n*, 955 F.2d 1214, 1223 (9th Cir. 1990) (a plaintiff is "not required to state the statutory or constitutional basis for his [Section 1983] claim, only the facts underlying it."), cert. denied, 504 U.S. 957 (1992).

**B**

The court must first decide whether Anderson has stated a claim that the alleged involuntary administration of medication violated his Fourteenth Amendment right to due process. Severe changes in conditions can implicate a due process violation. *Washington v. Harper*, 494 U.S. 210, 221-22 (1990) (involuntary administration of psychotropic drugs). A Fourteenth Amendment liberty interest can be asserted if Anderson alleges that a change in confinement imposed an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Id.* (citations omitted). Anderson alleges that he was deprived of a

liberty interest by being subject to forcible drugging by a prison doctor three times on August 9, 2006, once on August 10, 2006, and once again on August 30, 2006.

California law provides inmates with the "right to refuse . . . [mental health] treatment . . . except . . . [w]hen diagnostic study has led to a diagnosis of existing or recurrent mental illness, which renders the inmate dangerous to self or others, or gravely disabled." Cal. Code Regs. tit. 15, § 3363 (2007). For involuntary medication in the event of an emergency, California law provides:

> If medication used in the treatment of mental disease, disorder or defect is administered in an emergency, as that term is defined in section 3351, such medication shall only be that which is required to treat the emergency condition and shall be provided in ways that are least restrictive of the personal liberty of the inmate.

Cal. Code Regs. tit. 15, § 3364(a) (2007). An "emergency" exists "when there is a sudden, marked change in an inmate's condition so that action is immediately necessary for the preservation of life or the prevention of serious bodily harm to the inmate or others, and it is impracticable to first obtain consent." Cal. Code Regs. tit. 15, § 3351 (2007).

Under the Due Process Clause, Anderson "possesses a significant liberty interest in avoiding the unwanted administration of antipsychotic drugs." *Washington v. Harper*, 494 U.S. 210, 221 (1990). In *Harper*, the Court determined that due process allows a mentally ill inmate to be treated involuntarily with antipsychotic drugs where there is a determination that "the inmate is dangerous to himself or others and the treatment is in the inmate's medical interest." *Id.* at 227. The Supreme Court has subsequently stated that "[u]nder *Harper*, forcing antipsychotic drugs on a convicted prisoner is impermissible absent a finding of overriding justification and a determination of medical appropriateness." *Riggins v. Nevada*, 504 U.S. 127, 135 (1992).

However, the procedural due process requirements set forth in *Harper* may not apply in emergency situations. *See Kulas v. Valdez*, 159 F.3d 453, 456 (9th Cir. 1999) (*Harper*

requirement that notice and right to be present and participate in hearing may not be required if inmate poses an imminent and serious danger to himself or others); *see also Hogan v. Carter*, 85 F.3d 1113, 1116-17 (4th Cir. 1996), *cert.* denied, 519 U.S. 974 (1996) (*Harper* procedural protections do not apply in emergency). *Kulas* is particularly instructive here. In *Kulas*, the plaintiff inmate was "loud and uncooperative" and the doctor ordered that he be forcibly injected with antipsychotic drugs. *Kulas*, 159 F.3d at 455-56. The court held that the involuntary administration of drugs was improper without procedural safeguards. *Id.* Specifically, the court provided:

> [t]o force anti-psychotic drugs on a prisoner or on a detainee awaiting trial is impermissible under the federal constitution, "absent a finding of overriding justification and a determination of medical appropriateness." *Riggins v. Nevada*, 504 U.S. 127, 135, 112 S. Ct. 1810, 118 L. Ed. 2d 479 (1992). The serious side effects that such medication can have on mind and personality, physical condition and life itself, have caused the court to lay down this rigorous test. *Harper*, 494 U.S. at 229-30. In the context of both *Harper* and *Riggins* such an invasion of the human person can only be justified by a determination by a neutral factfinder that the anti-psychotic drugs are medically appropriate and that the circumstances justify their application.

*Id.* at 455-56.

Therefore, the question in this case is whether California's emergency procedures regarding involuntary medication satisfy an inmate's due process rights. If so, the court must decide whether Anderson's allegations are true and, if so, whether, at the time Dr. Talisman ordered the medication to be involuntarily administered, such action was immediately necessary for the preservation of life or the prevention of serious bodily harm to Anderson or others, and it was impracticable to obtain his consent.

Anderson describes the events on August 9 and 10, 2006 in detail. He alleges facts that give the defendant, Dr. Talisman, notice of what the claim is and upon what grounds it rests. Additionally, he states that with regard to this incident, he did not threaten to harm himself or anyone else. Accordingly, Anderson has stated a cause of action for the alleged deprivation of

due process on August 9 and 10, 2006.

With regard to the allegedly involuntary medication administered on August 30, 2006, however, Anderson makes only a one-sentence claim: "On 8-30-2006, Dr. Talisman once again ordered involuntary medication to be administered upon [Anderson] against his will." Compl. at 7. The mere fact that Anderson received medication against his will does not necessarily state a claim for a violation of due process. As explained above, California allows for the involuntary administration of medication in the event of an emergency. Anderson fails to allege whether or not he was a threat to himself or anyone else on August 30 and also fails to allege whether he was provided with any administrative hearing or opportunity to respond to the administration of the medication.

Anderson has not alleged what events led to the alleged involuntary administration of medication on August 30, 2006. His statement that he was not a threat to himself or others in the conclusion of the Complaint appears to be directed to the events on August 9 and 10, 2006, not those that occurred on August 30, 2006. The federal rules only require plaintiff to allege "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Anderson must allege that the medication provided on August 30, 2006 was administered without his consent and that there was no basis to do so (i.e., that the medication was administered without a prior hearing or, if administered in an emergency, was not necessary for the preservation of life or the prevention of serious bodily harm to Anderson or others). Accordingly, Anderson is provided leave to amend his complaint with regard to the events that led to the administration of medication on August 30, 2006 and whether he posed a danger to himself or others on that date.

**C**

Allegations of retaliation against a prisoner's First Amendment rights to speech may support a claim under 42 U.S.C. § 1983. *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005).

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Id.* at 567-68; *see also Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989) (explaining that a plaintiff must plead facts which suggest "that the protected conduct was a 'substantial' or 'motivating' factor in the defendant's decision") (citation omitted)).

It is unclear from the complaint whether Anderson's First Amendment claims relate solely to the events on August 9 and 10, 2006 or also to the events on August 30, 2006. Anderson asserts in Count I that he was involuntarily administered psychotropic medication three times on August 9, 2006, the same day he spoke loudly about Iraq in his cell, and once in the morning on August 10, 2006. Compl. at 6-7. He also alleges that "Dr. Talisman once again ordered involuntary medication to be administered upon [Plaintiff] against his will" on August 30, 2006. *Id.* at 7. In Count II, Anderson claims that he was administered a psychotropic medication that caused his freedom of speech to be chilled for thirty-two hours, but he fails to specify the date that drug was administered. *Id.* at 8. It is not clear whether Anderson's freedom of speech was chilled solely on August 9 and 10, 2006 or also on August 30, 2006. This Court cannot speculate as to which date Anderson believed his freedom of speech was chilled. Anderson fails to allege in Count II whether his speech was chilled on August 9, 2006, August 10, 2006, or August 30, 2006–the dates he alleges he was involuntarily administered antipsychotic drugs.

Moreover, if Anderson's freedom of speech was allegedly chilled on August 30, 2006, he has not alleged any protected speech he made that day. Further, Anderson alleges insufficient facts regarding whether Defendant Talisman's order on August 30, 2006 to administer

antipsychotic drugs to Anderson was retaliatory or done with concern for his or other inmates' safety. Finally, whether the alleged First Amendment violation took place on August 9, 10, or 30, 2006, Anderson did not allege that Dr. Talisman's actions failed to reasonably advance a legitimate correctional goal–the fifth and final element to state a claim for retaliation against a prisoner exercising a First Amendment right. Thus, Anderson has failed to state a retaliation claim.

To properly state a First Amendment retaliation claim, Anderson must plead facts supporting his contention that his conduct–on each date alleged–was protected conduct. Anderson must also allege facts sufficient to support his claim that Dr. Talisman took some adverse action against him, such as involuntarily administering medication to him, because of his protected free speech, or other protected, conduct. Next, Anderson must allege that this action chilled his First Amendment rights. Anderson must allege facts clarifying which days he suffered the thirty-two hours of nausea, delusion, and hallucination resulting from the side-effects of medication he was administered involuntarily or other facts that explain how Dr. Talisman's actions chilled his First Amendment Rights. Finally, Anderson must allege that Dr. Talisman's conduct chilled the exercise of his First Amendment rights and that Dr. Talisman's action did not reasonably advance a legitimate correctional goal. *See e.g., Barnett,* 31 F.3d at 815-816 ("A prisoner suing prison officials under section 1983 for retaliation must allege that he was retaliated against for exercising his constitutional rights and that the retaliatory action does not advance legitimate penological goals, such as preserving institutional order and discipline.") (citing *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985)).

**D**

"Unless it is absolutely clear that no amendment can cure the defect . . . a pro se litigant is entitled to notice of the complaint's deficiencies and an opportunity to amend prior to dismissal of the action." *Lucas v. Dep't of Corrs.*, 66 F.3d 245, 248 (9th Cir. 1995) (per curiam).

"[A]n amended pleading supersedes the original." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1546 (9th Cir. 1990).

This Court grants leave to amend because an amendment may cure the defects in Anderson's complaint, thereby allowing him to state properly a claim, or claims, upon which relief may be granted.

**III**

Accordingly, IT IS HEREBY ORDERED that:

1. Anderson has stated a cause of action for violation of due process on August 9 and 10, 2006;[4]

2. Anderson's complaint is dismissed, in part, as follows:

    a. as to his claim of violation of due process on August 30, 2006; and

    b. as to his allegations that his First Amendment rights were violated on August 9, 10, and 30, 2006.

3. Anderson is granted leave to amend his complaint to state properly a claim or claims upon which this Court may grant relief;

4. Anderson's first amended complaint shall be due on or before November 21, 2008; and

5. If Anderson fails to file a first amended complaint on or before November 21,

---

[4] Anderson's allegations made on pages 6-7 and the conclusion on page 9 of the complaint are sufficient to state a cause of action that Dr. Talisman violated Anderson's rights under the Fourteenth Amendment on August 9-10, 2006. Accordingly, in the first amended complaint, Anderson may merely reassert these allegations as written. To state a cause of action for the events on August 30, 2006, with regard to Anderson's Fourteenth Amendment due process claims, and his allegations relating to the First Amendment on August 9, 10, and 30, 2006, Anderson must add additional allegations consistent with the views expressed in this order.

2008, his due process claim for the administration of medication on August 30, 2006 and his First Amendment claim shall be dismissed for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

DATED: October 21, 2008

/s/ Arthur L. Alarcón
UNITED STATES CIRCUIT JUDGE
Sitting by Designation